UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

YESHUWA YISRAEL,

        Petitioner,

v.                                          Case No. 3:15-cv-1360-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

        Petitioner Yeshuwa Yisrael, an inmate of the Florida penal system, initiated this action on November 13, 2015, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) with attachments (Doc. 1-1 through 1-5). In the Petition, Yisrael challenges a 2012 state court (Duval County, Florida) judgment of conviction for sexual battery while in familial or custodial authority. Yisrael raises eight grounds for relief. See Doc. 1 at 5-13;[1] Doc. 1-1. Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Resp.; Doc. 10) with exhibits (Resp. Ex.). Yisrael submitted a brief in reply on January 25, 2017. See Reply to the Respondent's Answer to Mr. Yisrael's Petition for Writ of Habeas Corpus (Reply; Doc. 11). This case is ripe for review.

---

[1] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On October 22, 2009, the State of Florida charged Yisrael, by way of a second amended Information, with three counts of sexual battery. Resp. Ex. 1 at 66-67. On September 28, 2009, with the assistance of counsel, Yisrael filed a motion to sever all counts. Id. at 51-53. The circuit court granted Yisrael's motion to sever on October 1, 2009. Id. at 54.

Yisrael proceeded to a jury trial on the sexual battery alleged in count one. Resp. Ex. 2. At the conclusion of the trial, on April 15, 2010, the jury found him guilty as charged. Resp. Ex. 1 at 96. On May 19, 2010, the circuit court sentenced Yisrael to a term of incarceration of thirty years for count one. Resp. Ex. 1 at 121-25.

On direct appeal, Yisrael, with the benefit of counsel, filed an initial brief raising the following issue: the trial court erred in relying on a dismissed count and an untried count in imposing the maximum authorized sentence. Resp. Ex. 5. The state filed an answer brief. Resp. Ex. 6. On July 22, 2011, Florida's First District Court of Appeal (First DCA) per curiam affirmed Yisrael's conviction. Resp. Ex. 8. However, the First DCA reversed the imposition of the thirty-year sentence due to the circuit court's consideration of impermissible factors and remanded the matter for a new sentencing hearing before a different judge. Id. The First DCA issued its Mandate on August 17, 2011. Id. Pursuant to the Mandate, the circuit court resentenced Yisrael to a term of incarceration of thirty years. Resp. Ex. 9. Yisrael did not pursue an appeal following his resentencing.

On July 5, 2013, Yisrael, with the benefit of counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, asserting that his attorneys (Refik Eller, Dale Carson, and Senovia Lance) were ineffective because

they: induced Yisrael to waive his speedy trial rights (ground one); failed to introduce exculpatory letters the victim wrote (ground two); failed to call two witnesses at trial (ground three); failed to investigate and present employment records from Yisrael and the victim's mother (ground four); failed to request a permissive lesser included offense (ground five); failed to object to improper closing arguments (ground six);and failed to conduct an adequate voir dire of Juror Woodie (ground seven). In addition, he asserts that the cumulative effect of his attorneys' errors violated his Sixth Amendment rights (ground eight). Resp. Ex. 10 at 5-35. On May 18, 2015, the circuit court denied Yisrael's Rule 3.850 motion. Resp. Ex. 11. The First DCA affirmed the circuit court's order per curiam without a written opinion on September 16, 2015, and issued its Mandate on October 2, 2015. Resp. Ex. 12.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Yisrael's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state

court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

**VI. Findings of Fact and Conclusions of Law**

**A. Ground One**

Yisrael alleges that his first attorney, Refik Eler, coerced him into signing a waiver of his speedy trial rights without explaining to him why it was in Yisrael's best interest to do so. Doc. 1 at 5; Doc. 1-1 at 5. According to Yisrael, the victim was not cooperating with the state; therefore, Yisrael wanted to assert his speedy trial rights. Doc. 1-1 at 5. With this understanding, Yisrael asked Eler and subsequent counsel, Dale Carson, to file demands for speedy trial. Id. at 5-6. However, neither Eler nor Carson filed a demand for speedy trial. Id. Yisrael claims his attorneys' alleged errors allowed the state an additional three years to gather witnesses and evidence against him. Id. at 6.

Yisrael raised this claim in state court as ground one of his Rule 3.850 Motion. Resp. Ex. 10 at 5-8. The circuit court denied the claim, stating in pertinent part:

> Defendant and his attorney signed a written waiver of his right to speedy trial on February 21, 2007. The Florida Supreme Court has recognized that:
>
> > [A]n attorney may waive speedy trial without consulting the client and even against the client's wishes. Thus, if the right to speedy trial may be waived without consulting the defendant, counsels' waiver here cannot be considered an error, let alone one that is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> McKenzie v. State, 153 So. 3d 867 (Fla. 2014) (citations omitted). Consequently, counsel's failure to demand speedy trial, despite Defendant's wishes, does not constitute an error, let alone an error that undermines the confidence of the

> outcome of the trial. "Moreover, "postconviction relief cannot
> be based on speculation or possibility. <u>Majaraj v. State</u>, 778
> So. 2d 944, 951 (Fla. 2000). <u>See also</u> <u>Valle v. State</u>, 70 So.
> 3d 530, 550 (Fla. 2011); <u>Hammond v. State</u>, 34 So. 3d 58, 60
> (Fla. 4th DCA 2010) ("[C]laims of ineffective assistance of
> counsel based on a failure to seek discharge because of a
> violation of speedy trial [are] extremely tenuous where the
> State had available the recapture window of Rule 3.191(p)(3).
> In almost all cases, an allegation of prejudice on this type of
> claim is speculative."). Accordingly, Defendant's claim is
> without merit, and ground one is denied.

Resp. Ex. 11 at 2-3 (record citations omitted). Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[3] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Ground One is without merit. Florida Rule of Criminal Procedure 3.191 governs a defendant's right to speedy trial in the Florida criminal judicial system. Pursuant to Rule 3.191(a), the state shall bring a defendant charged with a felony to trial

---

[3] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

within 175 days. "This right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." <u>Dillard v. Sec'y, Dep't of Corr.</u>, 440 F. App'x 817, 819 (11th Cir. 2011) (citing <u>State v. Nelson</u>, 26 So.3d 570, 574 (Fla. 2010)). To this end, Rule 3.191(b) provides that a defendant has the right to demand a trial within sixty days of filing a Demand for Speedy Trial.

Notably, "[under Florida law,] a waiver of speedy trial by counsel is binding on the defendant, 'even though done without consulting him and even against the client's wishes.'" <u>Dillard</u>, 440 F. App'x at 820 (quoting <u>State v. Kruger</u>, 615 So.2d 757, 759 (Fla. 4th DCA 1993)); <u>see also</u> <u>New York v. Hill</u>, 528 U.S. 110, 115 (2000) (holding that defense counsel could waive defendant's right to be brought to trial within the 180-day period specified under the Interstate Agreement on Detainers, by agreeing to a trial date outside that period, even without the express consent of defendant). Moreover, "'[a] claim of ineffective assistance of counsel based on a failure to seek discharge because of a violation of the speedy trial rule is extremely tenuous where the State had available the recapture window of Rule 3.191(p)(3),' which was added in 1985 to give 'the system a chance to remedy a mistake.'" <u>Remak v. State</u>, 142 So. 3d 3, 6 (Fla. 2d DCA 2014) (quoting <u>Hammond</u>, 34 So. 3d at 60; <u>Florida Bar Re: Amend. to Rules-Criminal Procedure</u>, 462 So. 2d 386 (Fla. 1984)). Additionally, Rule 3.191(l) allows for the extension of the speedy trial time frames where certain enumerated exceptional circumstances exist, such as "a showing by the state that specific evidence or testimony is not available despite diligent efforts to secure it, but will become available at a later time." Fla. R. Crim. P. 3.191(l)(3).

The record reflects that the Jacksonville Sheriff's Office arrested Yisrael on October 25, 2006. Resp. Ex. 1 at 1. On February 21, 2007, 119 days after his arrest, Yisrael entered an unlimited waiver of his speedy trial rights. Id. at 21. On June 9, 2009, the state filed a Petition for an Order to Show Cause, in which the state sought contempt proceedings based on the victim's significant lack of cooperation and her failure to appear at a scheduled deposition. Resp. Ex. 1 at 38-39. Yisrael proceeded to trial on April 15, 2010. Resp. Ex. 2.

Regarding Yisrael's claim that Eler coerced him into signing the waiver of his speedy trial rights, such a claim fails because Eler was entitled to waive Yisrael's speedy trial rights even over Yisrael's objection. See Dillard, 440 F. App'x at 820. Therefore, whether Yisrael was coerced is irrelevant to the propriety of counsel's decision to waive Yisrael's speedy trial rights. Moreover, Yisrael has failed to allege how in fact Eler coerced him; therefore, this claim is conclusory and not entitled to federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

Concerning Yisrael's claim that Eler and Carson were ineffective for failing to file a demand for speedy trial because the victim was not cooperating, the Court finds this claim is speculative and not entitled to federal habeas relief. See Fayson v. Sec'y, Fla. Dep't of Corr., 568 F. App'x 771, 774 (11th Cir. 2014) (holding Fayson could not establish prejudice in an ineffective assistance of counsel claim in part because he merely speculated that the state would have been unable to procure key witnesses for trial); see also Tejada, 941 F.2d at 1559. Although the record does reflect the victim was not

cooperating with the state, the victim ultimately testified at trial, Resp. Ex. 2 at 22-41, demonstrating the state's ability to procure her presence and testimony. Yisrael has presented no evidence suggesting the state could not have done the same at an earlier time, if required to do so pursuant to Rule 3.191. Moreover, the victim's unwillingness to cooperate would have constituted an exceptional circumstance under Rule 3.191(l), which could have allowed the circuit court to extend the speedy trial time period. Accordingly, in light of this record, the Court concludes Yisrael's claim of ineffective assistance of counsel is speculative and fails. Fayson, 568 F. App'x at 774; Tejada, 941 F.2d at 1559. Therefore, relief on Ground One is due to be denied.

## B. Ground Two

Yisrael contends that trial counsel was ineffective for failing to introduce two exculpatory letters the victim wrote. Doc. 1 at 7. Although acknowledging the victim testified about the content of one letter, Yisrael asserts trial counsel should have introduced the letters to further contradict the State's theory of the case. Doc. 1-1 at 6-7.

Yisrael raised this claim in state court as ground two of his Rule 3.850 Motion. Resp. Ex. 10 at 8-13. The circuit court denied the claim, stating in pertinent part:

> To the extent that Defendant argues that counsel should have presented both letters, this Court notes that the letters would only be cumulative to evidence already introduced at trial through the victim's trial testimony. On direct examination, the victim testified that Defendant did sexually abuse her from age twelve through sixteen and that, after bringing the abuse allegations to the police, she wrote a letter denying the abuse and claiming that she impregnated herself by using a syringe filled with semen she collected from a used condom. On cross-examination, the victim also testified that her claim of self-impregnation by syringe was not true, that she initially concocted the story because she thought the story would get the charges dismissed or dropped, and because she "was done, [she] didn't feel like being bothered with the

situation anymore. It was taking a lot out of [her], out of [her] family, and it was an everlasting cycle that [she] did not want to continue." However, she came to realize that testifying in court "is the only way that [this situation was] going to be really dealt with." Consequently, the letters themselves would merely have been cumulative to the victim's testimony. The failure to present cumulative testimony does not constitute ineffective assistance of counsel. Accordingly, ground two is denied.

Resp. Ex. 11 at 4 (citations omitted). Yisrael appealed, and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, in the event the state appellate court's adjudication of the claim is not entitled to deference, Ground Two is without merit. The failure to present cumulative evidence does not constitute ineffective assistance of counsel. Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1157 (11th Cir. 2017) (citations omitted). Generally, "evidence presented in postconviction proceedings is 'cumulative' or 'largely cumulative' to or 'duplicative' of that presented at trial when it tells a more detailed version of the same

---

[4] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

story told at trial or provides more or better examples or amplifies the themes presented to the jury." Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1260-61 (11th Cir. 2012).

The record reflects that the victim testified that she wrote a letter to Yisrael's attorney in which she recanted her allegations that Yisrael sexually abused her. Resp. Ex. 2 at 29-30, 35-40. The victim detailed the contents of that letter during direct and cross-examination, including using a syringe to extract semen from one of Yisrael's used condoms and impregnating herself with that semen. Id. at 29-30, 35-37. However, the victim testified that her statements in the letter were a lie, fabricated because she did not want to deal with the trauma of the situation. Id. at 30, 39-40. With this record, the Court concludes admitting the two letters into evidence would be cumulative because the letters merely would have provided a more detailed version of the contents of the letter that the victim had already discussed. Holsey, 694 F.3d at 1260-61. Accordingly, counsel was not ineffective for failing to present this cumulative evidence. Reaves, 872 F.3d at 1157. Therefore, as to Ground Two, Yisrael's Petition is due to be denied.

### C. Ground Three

Yisrael maintains that counsel was ineffective for failing to call Paula DeLuca, an investigator for attorney Senovia Lance, and Arita Charles, the victim's mother, as witnesses at trial. Doc. 1 at 8; Doc. 1-1 at 8. According to Yisrael, DeLuca would have testified about a conversation she had with the victim during which the victim told her the following: (1) she had a "strong dislike" for Yisrael due to his strict discipline; (2) she told her mother the father of her baby was a boy from a teen center; (3) she was so upset at Yisrael for throwing her down the stairs that she lied to police that Yisrael was the father

of her baby; (4) she used a syringe to extract Yisrael's semen from a used condom and impregnate herself with it; and (5) when pressed by DeLuca that her story did not make sense, the victim stated she was "sticking to her story." Doc. 1-1 at 8. Regarding Charles, Yisrael asserts she would have testified to the following: (1) it was rare that Yisrael was left alone with the children; (2) Yisrael did not have custodial control or authority over the victim outside of Charles' presence; and (3) she and Yisrael used condoms. Id.

Yisrael raised this claim in state court as ground three of his Rule 3.850 Motion. Resp. Ex. 10 at 13-19. The circuit court denied the claim, stating in pertinent part:

> Defendant claims that Ms. DeLuca would have testified that she did not believe the victim when the victim recanted, during their interview, allegations of sexual abuse and instead explained her pregnancy as self-impregnation with a syringe. Defendant asserts that Ms. DeLuca would testify that the victim stated that she had a strong dislike for Defendant due to his strict discipline. Defendant alleges Ms. DeLuca's testimony would have impeached the victim's trial testimony that "it wasn't like I didn't like him, I didn't like what he used to do to me." Defendant claims this prejudiced Defendant because it would have swayed the jury to discredit the victim and would have created a defense (that the victim had the opportunity to retrieve used condoms on several occasions) to the State's assertion that the victim did not know her ovulation schedule.

> Initially, "[it] is clearly error for one witness to testify as to the credibility of another witness." Tumblin v. State, 29 So. 3d 1093, 1101 (Fla. 2010) (quoting Acosta v. State, 798 So. 2d 809, 810 (Fla. 4th DCA 2001)). Therefore, counsel could not have called Ms. DeLuca to testify that she did not believe the victim's self-impregnation story. Moreover, it is unreasonable to believe that Ms. DeLuca's proposed testimony, that the victim voiced a strong dislike for Defendant, would have sufficiently impeached the victim and swayed the jury to an [sic] acquit Defendant when the victim clarified at trial that, although she did not dislike Defendant, she did dislike what he did to her. To the extent that Defendant alleges counsel was ineffective for failing to call Paula DeLuca as a witness, his claim is without merit.

. . . .

As Defendant notes in his Motion, counsel advised the trial court that Defendant wanted counsel to call State witness Arita Charles as a witness. Counsel advised the trial court that it was a strategic decision not to call her as a witness because she was originally listed as a State's witness and counsel was uncertain what her testimony would be in light of her conflicting statements about whether there were opportunities for Defendant to be alone with the victim. Defendant claims that counsel did not advise the court correctly with regard to the basis for his request to call Ms. Charles as a witness. This Court finds that counsel addressed all the reasons that Defendant now highlights in this motion. Counsel stated on the record that failing to call Ms. Charles was a strategic decision. When it is obvious from the record that counsel's decision was strategic, an evidentiary hearing is not required. <u>Hamilton v. State</u>, 979 So. 2d 420, 422 (Fla. 2d DCA 2008). To the extent that Defendant alleges that counsel was ineffective for failing to call Arita Charles as a witness, his claim is without merit.

Resp. Ex. 11 at 5-6 (record citations omitted). Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[5] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Ground Three is without merit. The Eleventh Circuit has noted:

> An attorney's strategic choices made after thorough investigation of the law and facts "are virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690, 104 S.Ct. at 2066. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir.1995) (en banc).

<u>Ledford</u>, 818 F.3d at 647. Moreover, a petitioner cannot establish a claim of ineffective assistance where the proposed testimony of an uncalled witness would have been merely cumulative to other evidence or testimony provided at trial. <u>Hall v. Thomas</u>, 611 F.3d 1259, 1293 (11th Cir. 2010); <u>Adams v. Balkcom</u>, 688 F.2d 734, 741 (11th Cir. 1982); <u>see generally</u> <u>Reaves</u>, 872 F.3d at 1157 (holding the failure to present cumulative evidence does not constitute ineffective assistance of counsel).

Concerning counsel's decision not to call DeLuca, as noted above, the victim testified concerning her previous recantation and claim of self-impregnation. Resp. Ex. 2 at 29-30, 35-40. Accordingly, DeLuca's testimony on this matter would have been cumulative; therefore, Yisrael cannot demonstrate prejudice. <u>See</u> <u>Thomas</u>, 611 F.3d at 1293; <u>Balkcom</u>, 688 F.2d at 741; <u>Reaves</u>, 872 F.3d at 1157. DeLuca's belief in the veracity of the victim's story she heard would be impermissible testimony under Florida law. <u>See</u> <u>Tumblin</u>, 29 So. 3d at 1101. Therefore, counsel cannot be ineffective for failing to present inadmissible evidence. <u>See</u> <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th

Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Regarding, the victim's statement that she disliked Yisrael due to his strict discipline, the Court finds Yisrael cannot demonstrate prejudice. At trial, the victim testified that "I don't hate or dislike anything, of course, I was a child at the time, I didn't like being chastised." Resp. Ex. 2 at 30. On cross-examination, trial counsel asked the victim whether she ever liked Yisrael, to which she responded, "[i]t wasn't that I didn't like him, I didn't like what he used to do to me, but . . . it's not like I didn't like him as a person. Id. at 31. Trial counsel pressed further during cross-examination, discussing Yisrael's role as a disciplinarian and noting that the victim only alleged the sexual abuse claims when the police did not believe that Yisrael physically abused her. Id. at 31-38. Trial counsel later used this testimony in her closing argument to contend to the jury that the victim fabricated this sexual abuse because of Yisrael's strict discipline. Id. at 81-82. DeLuca's testimony concerning the victim's dislike for Yisrael would not have been prejudicial to the victim's credibility in light of her reasonable explanation of her feelings toward Yisrael. Moreover, trial counsel's cross-examination of the victim elicited testimony counsel later used to argue that the victim fabricated her claim of sexual abuse. As such, the Court finds there is no reasonable probability the outcome of the trial would have been different had DeLuca testified.

As it relates to counsel's decision not to call Charles, the Court finds that trial counsel made a reasonable strategic decision not to call her as a witness. While the jury deliberated, trial counsel put on the record why she decided against calling Charles as a witness. Id. at 98-101. According to trial counsel, Yisrael wanted to call Charles to discuss

her belief in the veracity of the victim's sexual abuse claims and to discuss the lack of opportunity Yisrael would have had to commit this offense. Id. However, trial counsel felt it would be improper for Charles to testify as to the credibility of another witness and that Charles' testimony concerning Yisrael's opportunity to be alone with the victim was conflicting and would not have helped the case. Id. at 99-100. Trial counsel's decision not to call Charles as a witness was reasonable for two reasons. First, it would have been improper for Charles to discuss whether she believed the victim's claims. See Tumblin, 29 So. 3d at 1101. Second, based on the potential conflict in Charles' testimony regarding Yisrael's opportunity to commit the crime, presentation of her testimony could have potentially harmed the defense theory by corroborating the victim's testimony about being alone with Yisrael. Therefore, counsel was not ineffective for failing to call Charles as a witness. See Ledford, 818 F.3d at 647. Relief on Ground Three is due to be denied.

### D. Ground Four

Yisrael asserts that his trial counsel was ineffective for failing to present his employment records and those of the victim's mother. Doc. 1 at 10. According to Yisrael, these employment records would have shown that Yisrael and the victim's mother "were either always working *together*, working apart, or were together with the children at the same time." Doc. 1-1 at 9. Yisrael claims these records would have demonstrated that he was rarely alone with the victim. Id.

Yisrael raised this claim in state court as ground four of his Rule 3.850 Motion. Resp. Ex. 10 at 19-20. The circuit court denied the claim, stating in pertinent part:

> In ground four, Defendant claims that, but for counsel's failure to present employment records of both Defendant and Arita Charles, there is a reasonable probability that the jury would have found Defendant not guilty. Defendant alleges

> that these employment records would show that Defendant and Ms. Charles were always working together, working apart, or with the children at the same time. Yet, Defendant also states that the records would show that, on rare occasions, Defendant would in fact be alone with the children. Had counsel introduced employment records that proved, as Defendant states, that Defendant was rarely alone with the victim, those records would not refute but instead corroborate the victim's testimony that Defendant was alone with her while her mother was away at work. Because Defendant has failed to establish the requisite prejudice under <u>Strickland</u>, his claim is without merit.

Resp. Ex. 11 at 7. Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[6] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Ground Four is without merit. Contrary to Yisrael's contention otherwise, the employment records would not have refuted the victim's testimony that Yisrael was sometimes home alone with her. Yisrael readily admits in his Petition that the records would demonstrate that, at least on rare occasions, he was home alone with the

---

[6] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

victim. Doc. 1-1 at 9. Accordingly, the records would have hurt Yisrael's defense, because the records would have corroborated the victim's statement. As such, a reasonable defense attorney could have decided not to present these records because they would have undermined Yisrael's defense theory that he did not have the opportunity to commit this offense.[7] Counsel are not ineffective for failing "to present cumulative evidence or evidence incompatible with the defense strategy." Rhode v. Hall, 582 F. 3d 1273, 1287 (11th Cir. 2009). Therefore, Yisrael has failed to establish either deficient performance or prejudice. Relief as to Ground Four is due to be denied.

### E. Ground Five

Yisrael contends that trial counsel was ineffective for failing to request a jury instruction on the permissive lesser included offense of lewd or lascivious battery. Doc. 1 at 12. According to Yisrael, he was entitled to the reading of this instruction because the Information alleged each of the elements of lewd or lascivious battery and there was evidence at trial establishing that offense. Doc. 1-1 at 9.

Yisrael raised this claim in state court as ground five of his Rule 3.850 Motion. Resp. Ex. 10 at 20-25. The circuit court denied the claim, stating in pertinent part:

> In ground five, Defendant claims that, but for counsel's failure to request the jury instruction for the category-two, permissive lesser-included-offense of Lewd or Lascivious Battery, the trial court would have been required to give the jury instruction and there is a reasonable probability that the result of the trial would have been different. Although Defendant acknowledges Sanders v. State, 946 So. 2d 953,

---

[7] Because the Court's inquiry is an objective one, counsel's *actual* motivation is irrelevant on federal habeas review. See Castillo v. Sec'y, Fla. Dep't of Corr., 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

960 (Fla. 2006), (holding, "as a matter of law, the possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland. Therefore, a claim alleging ineffective assistance of counsel for failure to request an instruction on a lesser-included offense may be summarily denied."), he attempts to distinguish his case from Sanders by arguing that he was prejudiced in two different ways. First, he claims that he was prejudiced by the fact that there was insufficient evidence at trial for a conviction on Sexual Battery while in Familial or Custodial Authority. Second, he alleges he was prejudiced because he lost his right to a direct appeal. Additionally, Defendant asserts that the holding in Sanders is an unreasonable application of Strickland.

As an initial matter, this Court finds unpersuasive Defendant's argument that Sanders violates Strickland, and this Court declines to make such a finding. To the extent Defendant attempts to distinguish his claim from Sanders by arguing that he was prejudiced due to a lack of trial evidence for a conviction on the charged offense of Sexual Battery while in Familial or Custodial Authority, this Court notes that Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Defendant may not seek to avoid this procedural bar by couching his allegations in terms of ineffective assistance of counsel. See Arbelaez v. State, 775 So. 2d 909 (Fla. 2000) ("Arbelaez may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel."); Cherry v. State, 659 So. 2d 1069 (Fla. 1995); Chandler v. State, 634 So. 2d 1066 (Fla. 1994); Lopez v. Singletary, 634 So. 2d 1054 (Fla. 1994); Torres-Arboleda v. Dugger, 636 So. 2d 1321 (Fla. 1994); Swafford v. State, 569 So. 2d 1264 (Fla. 1990); Medina v. State, 573 So. 2d 293 (Fla. 1990). To the extent that Defendant challenges the sufficiency of the evidence against him, his claim is without merit.

To the extent Defendant alleges prejudice by losing his right to appellate review, "failure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). Prejudice must be assessed "based upon its effect on the results of the trial, not on its effect on appeal. Id. (citing Carratelli v. State, 961 So. 2d 312, 323 (Fla. 2007)).

> Defendant's prejudice argument with regard to his appeal is
> without merit. Accordingly, Defendant's fifth ground is denied.

Resp. Ex. 11 at 7-8. Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Ground Five is without merit. Underlying Yisrael's claim of prejudice is the idea that the jury would have found him guilty of lewd or lascivious battery had the instruction been included. However, the jury specifically found that the state proved each element of sexual battery while in familial or custodial authority beyond a reasonable doubt; therefore, Yisrael's prejudice allegation relies solely on the conceptual possibility of a jury pardon. The possibility of a jury pardon, however, cannot establish prejudice under Strickland. See Sanders, 946 So. 2d at 959-60 (holding that although the failure to instruct the jury on a necessarily lesser included offense can be per se reversible error on direct appeal, the mere possibility that the jury might have exercised its "pardon power"

_____

[8] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

"cannot form the basis for a finding of prejudice" to support an ineffective assistance of counsel claim in a postconviction motion); Strickland, 466 U.S. at 694-95 (noting in determining whether prejudice exists, a court should presume the "jury acted according to the law," and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed."). As Yisrael cannot demonstrate prejudice, his claim of ineffective assistance of counsel fails. See Ward, 592 F.3d at 1163. Accordingly, as to Ground Five, the Petition is due to be denied.

### F. Ground Six

Yisrael avers that trial counsel was ineffective for failing to object to the prosecutor's closing arguments that improperly bolstered the state's case and injected the state's personal opinions into the case. Doc. 1 at 13; Doc. 1-1 at 9. Specifically, Yisrael complains that the state's argument that the victim had no motive to lie and its recitation of reasons why the jury should find the victim's testimony truthful was improper. Doc. 1-1 at 9-10. Likewise, Yisrael asserts it was improper for the state to attack as unreasonable his defense theory that the victim self-impregnated herself. Id.

Yisrael raised this claim in state court as ground six of his Rule 3.850 Motion. Resp. Ex. 10 at 25-28. The circuit court denied the claim, stating in pertinent part:

> In Ground Six, Defendant claims that, but for counsel's failure to object to the State's improper comments during closing arguments, there is a reasonable probability that the outcome of the trial might have been different. Specifically, Defendant alleges that counsel failed to object when the State made comments that "ridiculed the theory of defense and personally vouched for the veracity of the victim." Defendant cites authority establishing the boundaries of propriety during

closing arguments. Among these, Defendant cites <u>Rivero v. State</u>, 752 So. 2d 1244 (Fla. 3d DCA 2000) for the notion that prosecutors must not make comments that cannot be reasonably inferred from the evidence in the record. The First DCA has agreed and noted, "[t]he purpose of closing argument is to present a review of the evidence and suggestions for drawing reasonable inferences from the evidence." <u>Toler v. State</u>, 95 So. 3d 913, 917 (Fla. 1st DCA ) (quoting <u>Fleurimond v. State</u>, 10 So. 3d 1140, 1148 (Fla. 3d DCA 2009)). A review of the trial transcript reveals that the State did not make inappropriate comments but rather attempted to persuade the jury to make reasonable inferences from the evidence in the record. Arguing that the jury should find the victim's testimony to be trustworthy based on record evidence does not equate to personally vouching for the victim's veracity. "[T]rial counsel cannot be deemed ineffective for failing to object to arguments that are proper." <u>Rogers v. State</u>, 957 So. 2d 539, 549 (Fla. 2007). Defendant's claim is without merit. Accordingly, Defendant's sixth ground for relief is denied.

Resp. Ex. 11 at 9-10 (record citations omitted). Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

---

[9] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Ground Six is without merit. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial.'" United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984)). In contrast,

> A prosecutor commits improper vouching by "arguing credibility based ... on evidence not before the jury," United States v. Eyster, 948 F.2d 1196, 1207 (11th Cir. 1991) (quotation omitted), or by placing "the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity," United States v. Epps, 613 F.3d 1093, 1100 (11th Cir. 2010) (quotation omitted).

United States v. Gonzalez, 834 F.3d 1206, 1226 (11th Cir. 2016).

Yisrael contends the following comments were improper:

> Reasons for you to believe the victim. First, she testified. . . . she testified, that's why you should believe her. Why lie? What is her motivation to lie?
>
> . . . .
>
> And if she was going to lie why not exaggerate the lie? . . . she came in here and told you the truth.
>
> . . . .
>
> And there is no reason for you not to believe her.

Resp. Ex. 2 at 77-80. However, these comments were not improper. When read in their full context, these comments were inferences the prosecutor made from evidence introduced at trial. The prosecutor recounted various aspects of the victim's testimony in arguing why the jury should believe the victim. Id. at 76-80. Accordingly, the state did not argue the victim was credible based on evidence not before the jury, nor did the state

make any explicit personal assurances of the victim's veracity; therefore, these comments were proper. See Gonzalez, 834 F.3d at 1226.

Next, Yisrael claims the following arguments were improper:

> Desperation breeds absurdity. This Defendant desperately wants you to believe that he did not impregnate [T.C.] when he was raping her from age 12 until age 16. He desperately wants you to believe that somehow she managed to impregnate herself through intravaginal insemination.
>
> . . . .
>
> That's not reasonable.
>
> . . . .
>
> . . . what if she had stated that an alien flew down from space and impregnated her? Does that mean you all of a sudden you've [got] to credit that statement?"

Id. at 84-86. Again, these comments were not improper, but were the prosecutor's reasonable inferences and conclusions from the evidence presented concerning the victim's prior recantation. The state did not place the prestige of the government behind any witness or otherwise improperly vouch for a witness. Instead, it argued the unreasonableness of a defense theory based on evidence presented at the trial, which is not improper. See United States v. Rosin, 263 F. App'x 16, 25 (11th Cir. 2008) ("In attacking inconsistencies in the defense's theory of the case, the prosecutor was commenting fairly on the evidence adduced at trial."). Accordingly, for the above stated reasons, Yisrael's claim for relief as to Ground Six is due to be denied.

### G. Ground Seven

Yisrael claims that trial counsel was ineffective for failing to adequately voir dire Juror Woodie and for failing to strike Juror Woodie because he was impartial. Doc. 1 at

14. According to Yisrael, Juror Woodie was unable to be fair and impartial because during voir dire he made a comment about wanting to hear from both sides before rendering judgment. Doc. 1-1 at 10-11. Yisrael contends that it is logical to conclude that Juror Woodie held Yisrael's decision not to testify against him. Id. As such, Yisrael now complains trial counsel should have asked follow-up questions and ultimately struck Juror Woodie for cause. Id.

Yisrael raised this claim in state court as ground seven of his Rule 3.850 Motion. Resp. Ex. 10 at 29-34. The circuit court denied the claim, stating in pertinent part:

> "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007).
>
> > A juror is competent if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial-i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record.
>
> Id. (citations omitted). Here, evidence of actual bias is not plain on the face of the record. The transcript shows that, although Juror Woodie first mentioned that he would need to hear both sides of a story before determining whether he thought a credible witness was lying, and that he could not say whether he could reach a guilty verdict based on the testimony of one witness, he then stated, after the State

rephrased its question, that it was possible for him to reach a verdict one way or the other after hearing the testimony of that witness. Consequently, Defendant has failed to demonstrate that Juror Woodie was actually biased against the Defendant, Defendant has also failed to identify a better-suited venire member. See also Peterson v. State, 154 So. 3d 275, 282 (Fla. 2014); reh'g denied (Dec. 2, 2014) (rejecting argument of ineffective assistance of counsel for failure to use a peremptory challenge to strike a juror because, in part, "Peterson does not point to any particular venire member that would have been better qualified to serve in place of a seated juror.").

Even reviewing the transcript in a light most favorable to Defendant, and assuming that Juror Woodie *was* biased in some capacity, that bias would not be against Defendant, as required by Caratelli, but against the State, because his first response shows that he might be skeptical of the victim's testimony against Defendant. If this were true, Juror Woodie's voting to convict Defendant would indeed support Juror Woodie's competence because he would have set aside that bias and based his verdict only on the evidence on record and the law as instructed by the trial court. See Caratelli, 961 So. 2d at 324 ("A juror is competent if he or she 'can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.'"). Defendant's claim is without merit. Accordingly, Defendant's seventh ground for relief is denied.

Resp. Ex. 11 at 11-12 (record citations omitted). Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly

---

[10] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Ground Seven is without merit. The Eleventh Circuit has explained:

> . . . To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir.1993) (emphasis added); see also Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). Moreover, the U.S. Supreme Court has upheld a trial court's seating of a juror even where the juror gave conflicting or ambiguous answers during voir dire about his ability to be impartial. See, e.g., Patton v. Yount, 467 U.S. 1025, 1038–40, 104 S.Ct. 2885, 2892–93, 81 L.Ed.2d 847 (1984); Murphy v. Florida, 421 U.S. 794, 801–03, 95 S.Ct. 2031, 2037–38, 44 L.Ed.2d 589 (1975).

> Under Florida law, the test at trial "for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). The trial court must grant a party's motion to strike a prospective juror for cause if there is "any reasonable doubt" as to the juror's impartiality. Singer v. State, 109 So.2d 7, 23 (Fla.1959).

> In the post-conviction context, however, Florida has an actual bias requirement. See Carratelli v. State, 961 So.2d 312, 323 (Fla.2007). "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." Id. at 324 (emphasis added). To meet the actual bias standard, "the defendant must

demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." Id.

Fennell v. Sec'y, Fla. Dep't of Corr., 582 F. App'x 828, 832 (11th Cir. 2014).

Here, the following exchange occurred during voir dire between the state and Juror Woodie:

| | |
|---|---|
| Mr. Powell: | . . . And does anybody here believe that they want to hear from more than just one person, that being the victim, in order to be able to reach a fair and impartial verdict, does anybody feel they want to hear from more than just the victim, please raise your hand. . . . |
| | Mr. Woodie, I believe you raised your hand. Well, do you understand that, once again, that's going back to the discussion about witness credibility. If you hear from one witness, one person, the victim, and she testifies and you find her to be credible, you believe that you have no reason to believe that she's not telling the truth. |
| Prospective Juror: | No. I got to hear from both sides, one person can't tell the story. |
| Mr. Powell: | Okay, understandable. And I just want to touch upon something you said there, to hear from both sides. Do you understand that the defense has absolutely no obligation whatsoever to put on any evidence? |
| Prospective Juror: | Uh-huh. |
| Mr. Powell: | Okay. So, you may only hear from the side of the State, do you understand that? |
| Prospective Juror: | Yeah. |

| | |
|---|---|
| Mr. Powell: | So, in that situation, if you were to hear from one witness that you found to be credible, do you believe that you can reach a verdict, a guilty verdict, based on hearing that one witness? |
| Prospective Juror: | I couldn't tell you that. |
| Mr. Power: | You couldn't tell me. And actually, that's a very good answer. Because really you want to be able to – you can't answer how you would, you know, view something or judge something in a future situation. But do you believe that it's possible one way or the other? |
| Prospective Juror: | Yeah. |

Resp. Ex. 3 at 48-50. Based on this record, the Court finds Yisrael has failed to prove that Juror Woodie was actually biased against the defense. While initially stating he would need to hear from both sides, the state rehabilitated Juror Woodie to the point where he agreed it is possible to reach a guilty verdict based on the testimony of only one witness. Moreover, as the circuit court noted, any potential bias expressed by Juror Woodie would have been against the state, because the defense did not present any testimony. Resp. Ex. 2. Therefore, Yisrael cannot demonstrate actual bias against him, and, likewise cannot demonstrate prejudice under Strickland. See Carratelli, 961 So.2d at 324; Fennell, 582 F. App'x at 832. As such, relief on Ground Seven is due to be denied.

## H. Ground Eight

Yisrael maintains that the cumulative effect of trial counsels' ineffectiveness deprived him of a fair trial. Doc. 1 at 15; Doc. 1-1 at 11. Yisrael raised this claim as ground eight in his Rule 3.850 motion. Resp. Ex. 10 at 34-35. The circuit court denied the claim, stating:

In ground eight, Defendant argues that the cumulative effect of the errors allegedly committed in his case constitute reversible error. Defendant has raised a total of seven prior grounds of alleged error, all of which have been denied. "[A] claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges." Suggs v. State, 923 So. 2d 419, 441 (Fla. 2005) (citing Bryan v. State, 748 So. 2d 1003, 1008 (Fla. 1999)); Lowe v. State, 2 So. 3d 21, 33 (Fla. 2008) (holding that where individual claims are either procedurally barred or without merit, the cumulative error claim must fail). Consequently, the Court rejects Defendant's cumulative error argument as meritless. See also Mansfield v. State, 911 So. 2d 1160, 1168 n.6 (Fla. 2005) (citing Griffin v. State, 866 So. 2d 1, 22 (Fla. 2003), cert. denied, 543 U.S. 962 (2004)). Accordingly, Defendant's eighth ground for relief is denied.

Resp. Ex. 11 at 12. Yisrael appealed and the First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. 12.

To the extent that the First DCA decided the claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Yisrael is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim is without merit. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can

_____

[11] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Yisrael's individual claims of error or prejudice have merit, Yisrael's cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Thus, Yisrael's claim for relief in Ground Eight is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Yisrael seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Yisrael "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.       The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.       The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.       If Yisrael appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.       The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of October, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Yeshuwa Yisrael, #J41528
        Rachael Bushey, Esq.
        Bryan G. Jordan, Esq.